1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10
WANDA BROWN,                    )      1:07-00352 LJO GSA HC
11                                 )
                   Petitioner,    )
12                                 )      FINDINGS AND RECOMMENDATION
        v.                         )      REGARDING PETITION FOR WRIT OF
13                                 )      HABEAS CORPUS
                                   )
14    DEBRA PATRICK, Warden,       )
                                   )
15                 Respondent.     )
    _____ )
16

17        Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to

18    28 U.S.C. § 2254. She is represented in this action by Eric C. Smith, Esq., and Margaret G. May,

19    Esq., of the law offices of Covington and Burling.

20                        **PROCEDURAL BACKGROUND**

21        Petitioner is currently in the custody of the California Department of Corrections pursuant to

22    a judgment of the Superior Court of California, County of San Francisco, following her conviction

23    by guilty plea on July 9, 1985, of second degree murder. See Respondent's Answer (hereinafter

24    "Answer"), Exhibit A. Petitioner was sentenced to serve an indeterminate term of sixteen years to

25    life with the possibility of parole. Id.

26        By this petition, Petitioner does not challenge her underlying conviction and sentence.

27    Rather, she challenges a prison disciplinary hearing held on March 31, 2005, in which she was found

28    guilty of mutual combat pursuant to 15 Cal. Code of Regs. § 3005A. See Answer, Exhibit B. She

1   was assessed a credit forfeiture of 61 days. Id. Petitioner appealed the decision administratively.

2   However, all appeals within the institution were denied, thereby exhausting her administrative

3   remedies.

4         On April 17, 2006, Petitioner filed a petition for writ of habeas corpus in the Madera County

5   Superior Court. See Answer, Exhibit D. The superior court denied the petition on April 19, 2006,

6   finding that the decision was supported by "some evidence." Id. Petitioner then filed a petition for

7   writ of habeas corpus in the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth

8   DCA"). The petition was summarily denied on August 17, 2006. See Answer, Exhibit E. Petitioner

9   next filed a petition for writ of habeas corpus in the California Supreme Court. The petition was

10   denied on November 15, 2006. See Answer, Exhibit F.

11         On March 6, 2007, Petitioner filed a federal habeas petition in this Court. Thereafter,

12   Petitioner retained counsel and filed an amended petition on July 20, 2007. Petitioner contends there

13   was not "some evidence" supporting the hearing officer's finding that Petitioner committed a mutual

14   combat in which the aggressor could not be determined. Respondent filed an answer on September

15   17, 2007. Petitioner filed a traverse on October 17, 2007.

16   **FACTUAL BACKGROUND**[1]

17         On Friday, March 25, 2005, at approximately 0625 hours, while completing a security check

18   of "A" wing and observing his partner, Correctional Officer R. Stanley conducting a security check

19   of "C" wing, Correctional Officer B. Torrence was informed by Officer Stanley, who was standing in

20   front of the window to room #21, that there was a fight in the room. Upon responding to "C" wing

21   and entering into room #21, Officer Torrence observed inmate Curtis standing over Petitioner, who

22   was in a kneeling position, with a handful of Petitioner's hair. Both of inmate Curtis' hands had

23   Petitioner's hair, while both inmates were facing each other in the middle of the room. Officer

24   Torrence then instructed inmate Curtis to let Petitioner go, to which she did not initially reply. Upon

25   further direct orders to inmate Curtis to let Petitioner's hair go, inmate Curtis complied and at this

26   point, inmate Curtis was escorted out of the room and secured in the unit game room. "C" Facility

27

28       [1]The summary of facts are taken from the Rules Violation Report dated March 31, 2005. See Answer, Exhibit B.

1    Sergeant Kent was notified via telephone that there had been an altercation in room #21 and

2    responded to the unit without further incident. Both inmates were subsequently escorted to Facility

3    "C" Medical Clinic to undergo medical evaluations.

4          MTA Moore conducted the medical evaluation of Petitioner. She did not report any injuries

5    sustained by Petitioner. When asked for a brief statement of the circumstances of the incident,

6    Petitioner stated it was "just a misunderstanding." She denied being hit and stated it was "verbal

7    only." The medical report of inmate Curtis indicated she had sustained scratches and abrasions to

8    her hands and wrist.

9          Petitioner requested inmates Benishek, Bowers, and Jones be interviewed at the hearing.

10   Inmates Benishek and Bowers refused to participate in the hearing. The request to have inmate Jones

11   participate was denied because Jones was not present during the incident.

12                                    **DISCUSSION**

13   I. Jurisdiction

14         Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

15   to a judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

16   the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

17   375 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the U.S.

18   Constitution. Petitioner's claims for relief arise out of a disciplinary hearing at Central California

19   Women's Facility in Chowchilla, California, which is located within the jurisdiction of this Court.

20   28 U.S.C. §§ 2254(a), 2241(d). If a constitutional violation has resulted in the loss of time credits,

21   such violation affects the duration of a sentence, and the violation may be remedied by way of a

22   petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990).

23   II.  Standard of Review

24         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

25   pursuant to the judgment of a State court only on the ground that [s]he is in custody in violation of

26   the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

27         The AEDPA altered the standard of review that a federal habeas court must apply with

28   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

1    Taylor, 529 U.S. 362 (2000). Under the AEDPA, an application for writ of habeas corpus will not be

2    granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved

3    an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

4    of the United States;" or "resulted in a decision that was based on an unreasonable determination of

5    the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d);

6    Lockyer v. Andrade, 123 S.Ct. 1166 (2003), *disapproving the Ninth Circuit's approach in* Van Tran

7    v. Lindsey, 212 F.3d 1143 (9th Cir. 2000); Williams, 529 U.S. 362. "A federal habeas court may not

8    issue the writ simply because that court concludes in its independent judgment that the relevant state

9    court decision applied clearly established federal law erroneously or incorrectly." Lockyer, 123 S.Ct.

10   at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations

11   omitted).

12         The state court's factual determinations must be presumed correct, and the federal court must

13   accept all factual findings made by the state court unless the petitioner can rebut "the presumption of

14   correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S.

15   765 (1995); Thompson v. Keohane, 516 U.S. 99 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th

16   Cir. 1997).

17   III.  Review of Petitioner's Claims

18         Petitioner contends she was unjustly found guilty of mutual combat. She contends there was

19   no evidence that she participated in mutual combat. She further contends that the evidence

20   demonstrated conclusively that inmate Curtis was the aggressor.

21         Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

22   diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418

23   U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a

24   prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's

25   due process rights are moderated by the "legitimate institutional needs" of a prison.  Bostic v.

26   Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-

27   455 (1984).

28         However, when a prison disciplinary proceeding may result in the loss of good time credits,

U.S. District Court
E. D. California        cd                                    4

due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)

Petitioner does not contend that she did not receive advance written notice, an opportunity to present evidence, or a written statement of the evidence relied upon and the reasons for the disciplinary action. Rather, she claims the decision was not supported by "some evidence." A review of the record reveals the state court was not unreasonable in finding some evidence supported the charge.

As discussed above, Correctional Officers Torrence and Stanley responded to Petitioner's cell and found Petitioner and Curtis locked in a struggle. See Answer, Exhibit B. The two were facing each other with Curtis standing over Petitioner and holding her hair. Id. Eventually, Curtis responded to direct orders from the officers to release Petitioner's hair. Id. Contrary to Petitioner's arguments, this does not demonstrate that Curtis was the aggressor or that the fight was not mutual. The officers did not respond until the altercation was already under way. While Curtis appeared to have the advantage when officers arrived, this does not prove Petitioner did not initiate the fight or willingly enter into mutual combat.

When Petitioner was asked by the MTA for an explanation of the circumstances, Petitioner informed the MTA that the incident was "just a misunderstanding." Id. She denied "being hit" and she stated the it was "verbal only." Id. In light of what officers observed, Petitioner's statements certainly support the hearing officer's findings that she was involved in mutual combat. Furthermore, the MTA did not discover any bruises or injuries to Petitioner whereas Curtis sustained scratches and abrasions to her hands and wrists. Id. Petitioner pleaded not guilty at the hearing and maintained she was innocent of mutual combat. Id. On the other hand, Curtis provided a statement that the incident was mutual. Id. Petitioner requested two eyewitnesses be present at the hearing, but

1  they refused to participate. Id. Given this record, there was some evidence supporting the hearing
2  officer's findings.

3      In sum, all due process requirements were satisfied. This Court cannot find that the state
4  court rejection of the petition was unreasonable. Petitioner's claims are without merit and the
5  petition should be denied.

6                                **RECOMMENDATION**

7      Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas corpus
8  be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter
9  judgment.

10      This Findings and Recommendation is submitted to the assigned District Judge, pursuant to
11  the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty days after being served with the
12  Findings and Recommendation, any party may file written objections with the Court and serve a
13  copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's
14  Findings and Recommendation."  Any reply to the objections shall be served and filed within ten
15  days after service of the objections.  The parties are advised that failure to file objections within the
16  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d
17  1153 (9th Cir. 1991).

18
19      IT IS SO ORDERED.
20  **Dated:   June 16, 2008**              _/s/ **Gary S. Austin**_
                                              UNITED STATES MAGISTRATE JUDGE
21
22
23
24
25
26
27
28

U.S. District Court
E. D. California      cd                              6